**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **Therl Taylor, #260961,** ) | **Case No. 2:16-cv-3084-RMG-MGB** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| **Walter Worrick, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

This is a civil action pursuant to 42 U.S.C. § 1983. Plaintiff is a state prisoner incarcerated at Ridgeland Correctional Institution in South Carolina.[1] He is proceeding *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1), and Local Civil Rule 73.02(B)(2) (D.S.C.), the United States Magistrate Judge is authorized to review the complaint and to submit findings and recommendations to the United States District Judge. After careful review, the Magistrate Judge recommends that the Complaint be **summarily dismissed**, with prejudice and without issuance and service of process, for the following reasons:

**I. Background**

Plaintiff is a state prisoner serving concurrent state sentences for murder (36 years) and possession of a weapon during the commission of a violent crime (5 years). His initial conviction was reversed by the South Carolina Supreme Court because the evidence was insufficient to warrant the jury charge on mutual combat. *See State v. Taylor,* 356 S.C. 227 (2003). Upon retrial in January 2005, the jury found him guilty of both charges. His appeal was dismissed. *State v.*

---

[1] See http://public.doc.state.sc.us/scdc-public/inmate. A state records check indicates that Plaintiff was incarcerated at Allendale Correctional Institution from January 11, 2012 until June 1, 2015, and then transferred to Ridgeland Correctional Institution.

*Taylor*, 2007 WL 8391909 (S.C. Ct. App. 2007) ("[a]fter a thorough review of the record pursuant to *Anders*...we dismiss the appeal"). Plaintiff's application for state post-conviction relief ("PCR") was denied. Plaintiff filed a federal habeas petition, which was denied on the merits. *See Taylor v. Warden*, Case No. 2:13-cv-2213-RMG-WWD, 2014 WL 4721183 (D.S.C. Sep. 22, 2014), *appeal dismissed*, 594 F.App'x 186 (4th Cir. March 2, 2015), *cert. denied*, 136 S.Ct. 323 (Oct. 13, 2015).

Plaintiff has also filed various unsuccessful § 1983 actions and appeals. *See Taylor v. Amason*, Case No. 2:13-cv-3449-RMG-BHH, 2015 WL 5707826 (D.S.C. Sep. 28, 2015), *affirmed* 646 F. App'x 334, 2016 WL 1622397 (4th Cir. April 25, 2016), *cert. denied*, 2016 WL 4083498 (Oct. 3, 2016); *Taylor v. Undetermined*, 2:15-cv-93-RMG-MGB (voluntarily dismissed), *appeal dism'd*, 635 F.App'x 123 (4th Cir. March 3, 2016); *Taylor v. Brooks*, 3:15-cv-1138-RMG-MGB (summarily dismissed), 2015 WL 4257022 (D.S.C., May 21, 2015), *adopted in part by* 2015 WL 4274834 (D.S.C., July 14, 2015), *affirmed by* 627 F.App'x 206 (4th Cir. Dec. 22, 2015), *cert. denied*, --- S.Ct. ---- (Oct. 3, 2016). Plaintiff has several other § 1983 actions currently pending against prison staff. *See Taylor v. Grubbs, et al.*, Case No. 2:15-cv-4985-RMG-MGB; *Taylor v. Pate, et al.*, Case No. 2:16-cv-2115-RMG-MGB.

## II. The Present Lawsuit

### A. Parties

Plaintiff has filed a lengthy complaint under 42 U.S.C. § 1983. (DE# 1, "Complaint" totaling 163 pages with attachments). In this Complaint, Plaintiff names the following eight employees of the South Carolina Department of Corrections ("SCDC") as Defendants: (1) Major Walter Worrick; 2) Virginia Grubbs (mail room attendant); 3) Pamela Smith (Grievance Coordinator); 4) Lt. C. Hartley; 5) John Pate (Warden); 6) Bryan Stirling (described as SCDC Director); 7) Jane Does (SCDC employees); and 8) John Does (SCDC employees). (DE# 1 at 1-2,

¶ III "Parties"). Plaintiff indicates that "all defendants are sued in their official and individual capacities." (*Id*.).

### B. The Complaint's Allegations

The allegations of Plaintiff's Complaint are rambling, difficult to follow, and at times, contradictory. Liberally construed, the gist of the Complaint is that Plaintiff is complaining that on several occasions, he was transferred to a different cell, unit, and/or prison. Plaintiff indicates he did not like various cellmates. Plaintiff alleges that on several occasions, other prisoners made "false complaints" about him, and the prison responded by investigating the complaints and temporarily moving Plaintiff to another cell and/or a unit with different cellmates. (DE# 1 at 3, ¶ IV "Statement of Claim"). Plaintiff complains that, at one point, he was placed in segregation while the prison investigated another inmate's complaint about him.[2] He contends the prison did this without "a good faith substantial reason" and that inmate "leaders coerced false accuser Harold Patterson to falsely accuse Plaintiff." (DE# 1 at 7, ¶ 28). In his Complaint, Plaintiff acknowledges that he was given a written "Notice of Placement in PHD" on December 5, 2014. (*Id*. at 4, ¶ 10).[3] Such Notice, which is attached as an exhibit to the Complaint, indicates that the reason for Plaintiff's placement in PHD was to "maintain the integrity of an investigation" and that his "presence in the population would create a threat to the physical safety, security, and/or order of

---

[2] The Complaint's attached exhibits indicate that Plaintiff was formally charged with sexual misconduct, although the charge was later dismissed. (DE# 1-1 at 43).

[3] Plaintiff uses a variety of acronyms to refer to the restricted unit in prison, and it is not clear whether he is referring to the actual name of the pertinent unit. The record reflects that the Grievance Responses (attached to the Complaint) refer to such unit as the Restricted Housing Unit ("RHU"). (See DE# 1-1 at 51).

the institution." (DE# 1-1 at 7).[4] Plaintiff vaguely complains that "proper procedures" were not followed when he was transferred to another cell.

Plaintiff complains that his new cellmate "Metro" weighed 100 pounds more than him and stole some "seasoning and toothpaste" from him while Plaintiff was "at medical." Plaintiff alleges that he then banged on the cell door for 35-40 minutes to get a guard's attention, and Metro told him to "get his ass off the door." (*Id*. at 5, ¶ 16). Plaintiff's Complaint does not allege that Metro took any actions against him. According to Plaintiff, Metro merely asked Supervisor Neisbeth for a different cellmate. Plaintiff was then moved to a cell with Dwauntrez Keith, who Plaintiff indicates "showed respect and acted real kind toward Plaintiff." (*Id.* at 6, ¶ 24). Plaintiff alleges, however, that "after a few days the situation deteriorated." (*Id*.).[5] Plaintiff was subsequently moved again to another cell. Plaintiff alleges that while he was in the segregation unit, some of his property (a television and radio) were stolen and that he did not like the replacement items that were given to him. According to Plaintiff, he was later transferred from Allendale Correctional Institution to Ridgeland Correctional Institution within the South Carolina prison system, which he refers to as a "retaliatory transfer." (*Id).*[6]

---

[4] Plaintiff alleges he was kept in segregation for "about 30 more days." (*Id*. at 9, ¶ 59). However, elsewhere, he refers to being in segregation for 50 days. (*Id*. at 6, ¶ 19). In his grievance, he indicated he was in SMU for approximately 33 days. (DE# 1-1 at 43). In any event, Plaintiff did not like being in the segregation unit.
[5] After seeing a counsellor and psychiatrist on January 5-6, 2015, Plaintiff was released to the general population on January 7, 2015. (DE# 1-1 at 49, 79). After other inmate complained about Plaintiff, he was briefly put in the segregation unit again. Plaintiff filed a grievance, complaining that his cellmate was masturbating. (*Id*. at 72-77). In his own words, Plaintiff indicates he reported to prison staff that "he did not get down with all that" and had indicated to staff the "hand signal for a masterbator." (*Id* at 77). Plaintiff's Complaint now mischaracterizes Dwauntrez Keith's behavior as "sexual advances." In response to Plaintiff's grievance, the Warden indicated that the Division of Police Services had reviewed the allegations and that "it has been determined that no further investigation is necessary ….you were placed in Jasper Unit for your well-being until your claims could be properly investigated… no evidence could be found to support your allegations against Inmate Dwauntrez Keith….you were released back into general population on January 28, 2015." (DE# 1-1 at 41-42).

[6] In another case before this Court, Plaintiff complained of the very same transfer to Ridgeland Correctional Institution. See Case No. 2:16-cv-2115-RMG-MGB. Plaintiff may not repeatedly litigate the same claim.

### C. Claims and Relief Sought

The pre-printed prisoner Complaint Form asks "What are the issues that you are attempting to litigate in the above-captioned case?" (DE# 1 at 2, ¶ IIB). In response, Plaintiff lists his issues as: "1st, 8th, and 14th Const. Amendments (Equal Protection & Due Process), Negligence/Gross Negligence, Retaliation, Conditions of Confinement, Respondeat Superior, PREA violations." (*Id.*). He also alleges that Jane/John Doe "intentionally withholds – stonewalls the grievance process." (*Id.* at 2, ¶ IIE).

For relief, Plaintiff seeks: 1) compensatory damages from each Defendant 2) punitive damages from defendants Worrick, Pate, Grubbs, and Smith; 3) a declaration that the Defendants violated his "federal/constitutional rights;" 4) an "Injunction that the actions, suffering and pain inflicted by defendants will not occur again;" and 5) any other relief. (DE# 1 at 10, ¶ V. "Relief").

## III. Relevant Law

### A. Standard of Review

Under established local procedure in this judicial district, the Magistrate Judge has carefully reviewed this *pro se* prisoner complaint pursuant to 28 U.S.C. § 1915 and in light of the following precedents: *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); and *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978).

The *pro se* Plaintiff filed this complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows the court to dismiss the case upon finding that the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant

who is immune from such relief." 28 U.S.C. §1915(e)(2)(B). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal theory may be dismissed *sua sponte* "at any time" under 28 U.S.C. §1915(e)(2)(B). *Neitzke*, 490 U.S. at 319. The statute "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits." *Id*. at 326. The Prison Litigation Reform Act ("PLRA") also provides for the screening of complaints "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

*Pro se* pleadings are given liberal construction and are held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). However, "[t]he 'special judicial solicitude' with which a district court should view ... *pro se* filings does not transform the court into an advocate. *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012), *cert. denied*, 133 S.Ct. 2401 (2013). Only those questions which are squarely presented to a court may properly be addressed." *Weller v. Dept. of Soc. Servs., City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990). Giving "liberal construction" does not mean that the Court can ignore a prisoner's clear failure to allege facts that set forth a cognizable claim. "Principles requiring generous construction of *pro se* complaints ... [do] not require ... courts to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). "While the Court liberally construes Plaintiff's claims, it will not fundamentally rewrite the causes of action provided in the Complaint." *Kerr v. Marshall Univ. Bd. of Govs.*, 2015 WL 1405540 (S.D.W.Va. Feb. 4, 2015), *adopted by* 2015 WL 1405537 (S.D.W.Va. Mar. 26, 2015), *affirmed* (4th Cir. May 24, 2016).

### B. The PLRA's 3-strike provision

The PLRA, at 28 U.S.C. § 1915(g) provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

*See McLean v. United States*, 566 F.3d 391, 404 (4th Cir. 2009). "[I]f a prisoner has already had three cases dismissed as frivolous, malicious, or for failure to state a claim for which relief may be granted, the prisoner generally may not proceed IFP but rather must pay up-front all filing fees for his subsequent suits." *Blakely v. Wards*, 738 F.3d 607, 609 (4th Cir. 2013), *as amended* (October 22, 2013). This means that, after receiving three strikes, a plaintiff will have to pay the full filing fee for almost any future non-habeas civil actions that he might wish to file. Id. at 610. Plaintiff is warned that if he continues to file pleadings that are frivolous, malicious, or fail to state a claim for which relief may be granted, he risks the accumulation of three strikes against him and the resulting denial of his future requests for *in forma pauperis* status, absent exceptional circumstances.

### IV. Discussion

#### A. Civil Actions under 42 U.S.C. § 1983

A civil action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a § 1983 claim, a plaintiff must allege facts indicating: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*,

487 U.S. 42, 48 (1988). While a complaint does not need to expressly invoke § 1983 as the legal theory for a plaintiff's claim, the United States Supreme Court has instructed that a complaint "must plead facts sufficient to show that [a] claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S.Ct. 346 (2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). The present Complaint fails to meet this minimal pleading standard.

The United States Supreme Court has made it clear that a plaintiff must do more than make conclusory statements to state a plausible claim. *Iqbal*, 556 U.S. at 677–79; *Bell Atlantic Corp.*, 550 U.S. at 555. Even with liberal construction, the present Complaint is subject to summary dismissal for failure to state a plausible claim for relief. *McLean*, 566 F.3d at 396 ("a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment and to be rendered with prejudice"), citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.' ") and *Carter v. Norfolk Community Hosp. Assoc.*, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice.").

### B. Official Capacity, 11th Amendment Immunity

To the extent Plaintiff seeks monetary damages from state officials in their official capacity, the Defendants are immune from such relief under the Eleventh Amendment of the United States Constitution. Sovereign immunity protects the State itself, as well as its agencies, divisions, departments, officials, and other "arms of the State." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989) (explaining that a suit against a state official in his official capacity is "no different from a suit against the State itself"); *see also, e.g., Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996); *Ransom v. Lawrence*, Case No. 6:12–3141–JFA–KFM, 2013 WL

4523588, *4 (D.S.C. Aug. 26, 2013) ("The defendants are all employees of the SCDC and thus are not subject to suit under § 1983 when sued in their official capacities"); *Jones v. SCDC*, Case No. 5:12–cv–03554–RBH-KDW, 2013 WL 3880175, *4 (D.S.C. July 26, 2013). Based on sovereign immunity, the SCDC and the individual Defendants in their official capacities should be dismissed as parties.

### C. No Supervisory Liability

Plaintiff attempts to sue the supervisory Defendants (Worrick, Smith, Hartley, Pate, and Stirling) in their individual capacity under a theory of *respondeat superior*. It is well-settled that supervisory positions alone do not subject a defendant to liability, as the doctrines of vicarious liability and *respondeat superior* generally do not apply in § 1983 actions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). The United States Supreme Court has repeatedly emphasized that an individual defendant is not liable under § 1983 absent any personal involvement. *Iqbal*, 556 U.S. at 676–77 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.... each Government official, his…title notwithstanding, is only liable for his…own misconduct"). The Fourth Circuit Court of Appeals has emphasized that in a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). The Complaint fails to allege facts that would subject any supervisory Defendants to personal liability.

Plaintiff complains that Jane Doe and John Doe "intentionally withholds and stonewalls the grievance process." (DE# 1 at 2, ¶ IIE). Plaintiff indicates that while he was in PHU (segregation), he was able to "file another informal request that result unsatisfactory (sic) causing

another Internal Grievance." (*Id*. at 4, ¶ 12). He indicates he "diligently filed an Internal Grievance, AI-0026-15, Exhibit 86 and 8." (*Id*. at 7, ¶ 26.1). To the extent Plaintiff is suing any supervisory Defendants for denying grievances (including the Jane/John Doe defendants), a prison official's denial of a grievance "after-the-fact" of an alleged incident falls short of alleging any basis for a § 1983 claim. *See Brooks v. Beard*, 167 F.App'x 923, 925 (3rd Cir. 2006) (dismissing case as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and explaining that a response by prison officials to an inmate's grievance does not establish the involvement of those officials in the alleged underlying incident); *DePaola v. Ray*, 2013 WL 4451236, *8, 30, n.7 (W.D.Va.), *adopted by* 2013 WL 4453422 (W.D.Va. Aug. 16, 2013) (same). Moreover, the Fourth Circuit Court of Appeals has explained that "prisoners do not have a constitutional right of access to the grievance process." *Daye v. Rubenstein*, 417 F.App'x 317 (4th Cir. 2011), *cert. denied*, 132 S.Ct. 161 (2011). The Complaint fails to state a claim for any constitutional violation based on the processing and denial of grievances, and any such allegations are frivolous, both factually and legally.

To the extent the Plaintiff's allegations could be liberally construed as complaining that unspecified prison policies and procedures were not followed, a defendant's alleged failure to follow prison policy or procedure does not, by itself, amount to a constitutional violation. *See United States v. Caceres*, 440 U.S. 741 (1978); *Riccio v. Cty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); *Gadeson v. Reynolds*, Case No. No. 2:08-3702-CMC-RSC, 2009 WL 4572872 (D.S.C. Dec. 4, 2009), *aff'd by* 392 F.App'x 234 (4th Cir. Aug. 26, 2010) ("violations of prison policies and/or procedures do not rise to the level of a constitutional violation"); *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not

actionable under § 1983). Plaintiff acknowledges that he was given a written notification when he was temporarily moved based on another inmate's complaints about alleged misconduct by Plaintiff. (DE# 1 at 4). Although Plaintiff alleges that the notice was not specific enough and that "proper procedures" were not followed when he was transferred to another cell during the investigation (*Id.* at 6, ¶ 21), the Plaintiff's allegations are conclusory, vague, and fall short of stating any sort of constitutional violation. Summary dismissal is appropriate.

### D. Transfer to Another Cell, Unit, and/or Prison

Plaintiff's allegation that his transfer to another cell, unit, and/or prison violated his constitutional rights fails to state a plausible claim for relief. A prisoner has no inherent constitutional right to be incarcerated in a particular institution, *Meachum v. Fano*, 427 U.S. 215, 224 (1976), or to a particular security classification. *Montanye v. Haynes*, 427 U.S. 236, 242 (1974). In fact, the United States Supreme Court has expressly pointed to this type of allegation as an example of a frivolous claim for "infringement of a legal interest which clearly does not exist." *Neitzke*, 490 U.S at 327-28. As Plaintiff bases his claim on a non-existent right, his claim is subject to summary dismissal.

The Constitution is offended only when an inmate is subjected to atypical and significant hardships in relation to ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 481 (1995). Transfer from one cell, unit, or prison to another does not generally constitute an atypical and significant hardship. *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005); *White v. Phillips*, 118 F.App'x 1, 2 (6th Cir. 2004). Plaintiff was temporarily placed in segregation while prison staff investigated inmate complaints of Plaintiff's alleged sexual misconduct. Although Plaintiff did not like this, the United States Supreme Court has observed that the Eighth Amendment does not require that prisoners "be

housed in a manner most pleasing to them." *Atiyeh v. Capps*, 449 U.S. 1312, 1315-16 (1981; *see also Jones v. SCDC*, Case No. 5:12–cv–03554–RBH-KDW, 2013 WL 3880175 (D.S.C. July 26, 2013) ("Plaintiff's prison placement, though unpleasant to him, does not violate his federal constitutional rights."). Plaintiff has not alleged specific facts indicating that his transfer to a different cell, unit, or prison imposed any atypical and significant hardship on him.[7]

### E. Conditions of Confinement

While the Constitution does not mandate comfortable prisons, the treatment a prisoner receives in prison and his conditions of confinement are subject to constitutional scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (discussing the Eighth Amendment prohibition against "cruel and unusual punishment"). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). To be "deliberately indifferent," a prison official must have actual knowledge of a *substantial* risk of harm to a prisoner and disregard that substantial risk. *Id.* at 847; *Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004). A plaintiff must also indicate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. *Strickler*, 989 F.2d at 1380–81; *Tracey v. Kirkland Corr'l Inst.*, Case No. 1:12–cv–01614–JMC-SVH, 2013 WL 3049410, *5 (D.S.C.). The Complaint fails to allege any facts indicating a substantial risk of harm to Plaintiff, much less any deliberate indifference or resulting injury.

---

[7] Plaintiff's challenge to his transfer to a different unit and to a different prison have already been addressed in another § 1983 case. There, Plaintiff explained that he preferred his previous unit (which he refers to as CHU) because "[l]iving in the CHU allowed perks, gain and benefits and educational opportunities for growth and developments (sic)." (See Case No. 2:16-cv-2115-RMG-MGB, DE#1 at 7, ¶ 6). This Court may take judicial notice of its own records.

Although Plaintiff makes the conclusory allegation that he was kept in segregation under "inhuman (sic) conditions," (DE# 1 at 9, ¶ 59), Plaintiff has not alleged that prison officials failed to provide him with "adequate food, clothing, shelter, and medical care, and reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. In his Complaint, Plaintiff acknowledges that while in segregation, laundry was "taken and received once a week, sometimes twice." (DE# 1 at 9, ¶ 58). He indicates he received meals three times a day, received medication, incoming legal mail, and "showers 3-7 days." (*Id*.). Plaintiff also indicates that he was able "to write some correspondences by hand to some defends (sic) and other prison officials etc." (*Id*.).[8] The exhibits attached to the Complaint also expressly indicate that Plaintiff was given several opportunities to use the law library computer while he was briefly housed in the Restrictive Housing Unit ("RHU"). (DE# 1-1 at 51). Plaintiff acknowledges that during this time, he was "escorted to medical." (DE# 1 at 5, ¶ 15). He does not complain about such medical care. He does not complain about his bedding, any lack of heat, or the cleanliness of his cell. Plaintiff complains that, although he had access to showers, paper, and clean clothing, he did not have soap or hygiene supplies for "about a weak (sic)" and that he "was told by SCDC Lt. Neisbeth [that] she would bring some soap but did not." (*Id*., ¶¶ 53-54). This alleged inconvenience fails to rise to the level of a constitutional violation. *See, e .g, Cusamano v. Sobek,* 604 F.Supp.2d 416 (N.D.N.Y. Jan. 26, 2009) (denial of soap and toilet paper in special unit for a limited time did not amount to unconstitutional conditions of confinement).

### F. No Private Cause of Action Under PREA

---

[8] Plaintiff's Complaint indicates that he wrote various grievances, as well as many letters, including letters to the United States Department of Justice, SCDC Headquarters, SLED, Jasper Unit Supervisor McKnight, SCDC Investigator Orr, Randell Williams, Defendants Worrick, and Defendant Pate. (DE# 1 at 6, ¶ 26). This indicates that Plaintiff had adequate access to paper and writing materials, and that he was able to pursue his legal claims.

Although Plaintiff lists "PREA" violations as an issue, his Complaint does not make any relevant allegations under the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601. Moreover, 'it is well established that there is no private right of action under PREA." *Pope v. Oregon Dep't of Corr.*, 2012 WL 1866601 (D.Or. May 22, 2012); *and see Hill v. Hickman County Jail*, 2015 WL 5009301, *3 (M.D. Tenn. August 21, 2015) (collecting cases holding that there is no private right of action under PREA, and holding that "[t]o the extent the complaint might be construed as bringing a claim under the PREA, such claim must be dismissed"); *Montgomery v. Harper*, 2014 WL 4104163 (W.D.KY. Aug. 19, 2014) (same, dismissing suit). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue.... The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, 2008 WL 3851294 (D.Vt. Aug. 12, 2008) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002) ("Nothing short of an unambiguously conferred right will support a cause of action brought under § 1983")). Plaintiff was temporarily removed from the general prison population while the prison investigated inmate complaints of Plaintiff's own sexual misconduct. His vague allegation that unspecified policy was not followed or that the inmate complaints against him were "false" does not provide any basis for a § 1983 claim under this statute. Plaintiff's PREA claim is subject to summary dismissal.

### G. Alleged Deprivation of Property

Finally, Plaintiff complains that his television and radio were stolen and that he was "forced to accept a similar replacement TV, the same Model as Plaint's (sic) original TV and Sony digital Radio." (DE# 1 at 7, ¶ 36). The exhibits attached to the Complaint indicate that on March 24, 2015, Plaintiff "was offered and accepted a replacement television." (DE# 1-1 at 67, Grievance Response, indicating "Your acceptance of the replacement TV is considered to be an informal

resolution to your complaints about the theft of your property."). Plaintiff further alleges that his "temporary replacement TV was stoln (sic) by his roommates." (*Id*. at 8, ¶ 42).

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This constitutional "due process" guarantee is not implicated by the negligent act of a governmental official causing unintended loss of or injury to life, liberty, or property. *Daniels*, 474 U.S. at 335–36 n.3. Although Plaintiff's Complaint lists "negligence/gross negligence" as a claim, it is well-settled that negligence is not actionable under 42 U.S.C. § 1983. *Id.*; *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995).

Moreover, an intentional deprivation of property by a governmental employee does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In South Carolina, a prisoner may bring a state action for recovery of personal property against officials who deprive the prisoner of property without state authorization. *Bogart v. Chapell*, 396 F.3d 548, 561–63 (4th Cir. 2005) (finding that South Carolina provides a meaningful post-deprivation remedy for alleged property loss); *McIntyre v. Portee*, 784 F.2d 566, 567 (4th Cir. 1986) (same, citing S.C. Code Ann. § 15-69-10). Such state law provides "a post-deprivation remedy sufficient to satisfy due process requirements." *Bogart*, 396 F.3d at 561 (citing *Hudson*, 468 U.S. at 533). In any event, the record reflects that Plaintiff accepted a replacement television, thereby resolving the dispute. To the extent he alleges that an inmate subsequently stole his replacement television, this fails to state any sort of claim for alleged deprivation of property by the Defendants.

## V. Conclusion

In conclusion, the Complaint is subject to summary dismissal because it attempts to sue individuals protected by Eleventh Amendment immunity, fails to state a plausible claim for violation of any constitutional right, improperly attempts to sue supervisory defendants under a theory of *respondeat superior,* attempts to proceed under a statute (PREA) that provides no private cause of action, and alleges negligence claims that are not cognizable under §1983. To the extent the Complaint alleges violation of non-existent rights, the Complaint fails to state a claim for relief and is also factually and legally frivolous.

Accordingly, the Magistrate Judge recommends that the Complaint (DE#1) should be **summarily dismissed** with prejudice. As this dismissal is pursuant to the enumerated grounds of 28 U.S.C. § 1915(g), the dismissal of this case should count as a strike.

**IT IS SO RECOMMENDED.**

November 22, 2016
Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

Plaintiff's attention is directed to the **Important Warning** on the following page:

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).